ORIGINAL

D + F

C / M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ 1 4 2005 ★

P.M.
TIME A.M.

------------------------------------------------------------x

THOMAS and MARIE AIELLO, et al.,

        Plaintiffs,

    -against-

TOWN OF BROOKHAVEN,

        Defendant.

**MEMORANDUM AND ORDER**
Case No. 94-CV-2622 (FB)(WDW)

------------------------------------------------------------x

*Appearances:*
*For the Plaintiffs:*
BERNARD L. BURTON, ESQ.
Burton & Associates, P.C.
510 Broadhollow Road, Suite 207
Melville, NY 11747

ROBERT N. ZAUSMER, ESQ.
MICHAEL A. CIAFFA, ESQ.
Meyer, Suozzi, English & Klein, P.C.
1505 Kellum Place
Mineola, NY 11501

*For the Defendant:*
PAUL F. MILLUS, ESQ.
Snitow, Kanfer, Holtzer & Millus, LLP
575 Lexington Avenue
New York, NY 10022

**BLOCK, District Judge:**

        Individuals residing in the immediate vicinity of a former municipal landfill

("plaintiffs") sued the Town of Brookhaven ("Town") under the Resource Conservation

and Recovery Act ("RCRA"), Clean Water Act ("CWA"), and state common law for

pollution of a pond and creek. General familiarity with the litigation that followed is

presumed. *See Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81 (E.D.N.Y. 2001) (finding that

Town was not liable under CWA, but was responsible under RCRA for contaminating

Mott's Creek and Mott's Pond because it contributed to disposal of solid waste presenting

imminent and substantial endangerment to environment); *Aiello v. Town of Brookhaven*, No. 94-CV-2622 (E.D.N.Y. Aug. 15, 2001) (dismissing plaintiffs' state common law claims).

Pending before the Court is plaintiffs' counsel's motion for attorneys' fees and costs pursuant to 42 U.S.C. § 6972(e).[1] For the reasons that follow, the Court awards counsel attorneys' fees in the amount of $376,315.50 and costs in the amount of $29,932.54.

## I.

When they commenced this action, plaintiffs were represented by the law firm of Burton, Scott and Associates ("Burton firm"). In January 1997, the Burton firm retained the law firm of Meyer, Suozzi, English and Klein ("Meyer firm") as litigation co-counsel. In November 2004, counsel moved for an interim, pre-judgment award of attorneys' fees in the amount of $290,424.50 for the Burton firm and $185,286.25 for the Meyer firm. Counsel also sought costs in the amount of $30,845.15. No action was taken

---

[1] For ease of reference, the Court refers to plaintiffs' counsel collectively as "counsel." In their submissions, counsel characterize their motion as being brought under both 42 U.S.C. §§ 1988 and 6972(a)(1)(B). *See* Suppl. Affirm. [of Bernard L. Burton] Supp. Mot. Att'ys' Fees ¶ 8 ("this fee application [is] under 42 U.S.C. § 1988."); Decl. [of Bernard L. Burton] Reply Decl. Opp'n Suppl. Appl'n Att'ys' Fees ¶ 4 ("the relevant statute in this case. . . . [is 42] U.S.C. [§] 6972(a)(1)(B)[.]"). Neither characterization is correct. 42 U.S.C. § 1988 authorizes attorneys' fees in civil rights actions under certain enumerated statutes, none of which is at issue here. *See* 42 U.S.C. § 1988(b) (listing statues for which § 1988 fees are available). 42 U.S.C. § 6972(a)(1)(B) is not a fee-shifting statute; rather, it is the citizen-suit provision of RCRA under which the Town was found liable. *See Aiello*, 136 F. Supp. 2d at 114-17. Under 42 U.S.C. § 6972(e), however, the Court may "award costs of litigation (including reasonable attorney . . . fees)" to a party "prevailing or substantially prevailing" in a RCRA citizen suit. Accordingly, the Court construes counsel's motion as being brought under that section.

2

by the Court until final judgment was entered on December 20, 2004.[2] Magistrate Judge Wall then endeavored to resolve the parties' differences with respect to attorneys' fees and costs, but was unsuccessful. The Court thereafter afforded counsel the opportunity to supplement their application to include the period from the submission of their motion through the entry of judgment. In their supplemental submission, counsel requested an additional $3,395.00 in fees for the Burton firm and $10,112.50 in fees for the Meyer firm.[3] Their supplemental submission also sought a 25 percent equitable fees enhancement due to the contingent nature of their fee arrangement; such enhancement increased the total fees request from $489,218.25 to $611,522.81.

The Town posits the following objections: (1) certain billing statements lack the requisite specificity; (2) certain billing statements request hours that are excessive, redundant and unnecessary; (3) fees should not be paid for plaintiffs' unsuccessful state-

---

[2] Under fee-shifting statutes authorizing the award of attorneys' fees to prevailing parties, courts may order an interim fees award, but "only when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980). To qualify as "prevailing," a party must have obtained a court-ordered consent decree based on a settlement, an enforceable judgment on the merits, or an award of even "nominal" damages. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). Thus, although the Court's 2001 decision "established liability against the Town under 42 U.S.C. § 6972(a)(1)(B)[,]" *Aiello*, 136 F. Supp. 2d at 121, counsel were not entitled to a fees award until judgment was entered.

[3] The Court notes that it has corrected a mathematical error in the Meyer firm's supplemental request. In support of that request, the Meyer firm submitted an affirmation of Michael A. Ciaffa seeking $6,937.50 for 27.75 hours of work at his "current hourly rate of $350/hr.," as well as $400.00 of paralegal's fees. Suppl. Affirm. [of Michael A. Ciaffa] Supp. Mot. Att'ys' Fees ¶ 4. The correct product of 27.75 hours of work at a rate of $350 per hour is $9,712.50, not $6,937.50.

law claims; (4) the hourly rate sought is excessive and unsubstantiated; (5) an equitable enhancement is not warranted; and (6) counsel's requested costs are unsubstantiated and, with respect to certain requests, not compensable.

## II.

### A. Applicable Law

As noted, *see supra* note 1, RCRA authorizes a court to "award costs of litigation (including reasonable attorney . . . fees )" to a "prevailing or substantially prevailing party." 42 U.S.C. § 6972(e).[4] As the Supreme Court has explained, "[t]his language is similar to that of many other federal fee-shifting statutes; our case law construing what is a 'reasonable' fee applies uniformly to all of them." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal citations omitted). "The 'lodestar' figure has, as its name suggests, become the guiding light of [the Supreme Court's] fee-shifting jurisprudence." *Id.* There is "a strong presumption that the lodestar represents the reasonable fee." *Id.* (internal quotation marks omitted). The lodestar figure "is arrived at by multiplying 'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking reimbursement bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See*

---

[4] The citizen-suit provision of CWA authorizes a court to award the "costs of litigation (including reasonable attorney . . . fees) to any prevailing or substantially prevailing party[.]" 33 U.S.C. § 1365(d). Counsel's submissions make no reference to this provision. As is addressed below, because the Court finds that plaintiffs' claims under the CWA were "inextricably intertwined" with their RCRA claims, it has not reduced counsel's fee award to reflect plaintiffs' lack of success on the CWA claims.

*generally, New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983) (*"Carey"*).

## B. Determination of Attorneys' Fees

### 1. *Hours Billed*

"In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). Where documentation of billable hours expended is deficient, the Court may reduce the fee award accordingly. *See Hensley*, 461 U.S. at 433. In addition, the district court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quarantino v. Tiffany Corp.*, 166 F.3d 422, 425 (2d Cir. 1998).

Counsel seek to recover fees for 1,453.57 hours of legal services from October 19, 1993 through December 20, 2004. These hours are broken down as follows: (1) with respect to the Burton firm, Bernard Burton ("Burton"), 552.20 hours; Jonathan Scott ("Scott"), 155.32 hours; and Wendi Lindsey ("Lindsey"), 184.75 hours; and (2) with respect to the Meyer Firm, Robert Zausmer ("Zausmer"), 480.95 hours; G. Oliver Koppell ("Koppell"), 36.60 hours; Michael Ciaffa ("Ciaffa"), 37.50 hours; Andrew Turro ("Turro"), 2.25 hours; and paralegal services, 4.00 hours.

### a. Adequacy of time records

The Town contends that counsel's time records are objectionable due to their lack of specificity. In particular, they point to vague time entries in Burton and Zausmer's billing statements and the use of "block billing" by the Meyer firm, both of which, they

argue, unduly impede the Court's ability to ascertain the nature of the work performed.[5]

Counsel respond that their billing statements are appropriate, arguing that the Court, applying its knowledge of the case, should be able to decipher the time entries by reference to the context in which they occur.

In *Carey*, 711 F.2d at 1148, the Second Circuit held, "[h]ereafter, any attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and *the nature of the work done*." *Id.* (emphasis added). It is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures. *See Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998). Even where an attorney's time entries are, on their face, vague, "courts may attempt to decipher them by reference to the context in which these entries occur [to determine] what work was involved." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 970 F. Supp. 333, 342 (S.D.N.Y. 1997) (alterations in original; internal quotation marks omitted). Courts may also use their knowledge of a case to assess time entries. *See Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 894 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 95 (2d Cir. 1995).

Nonetheless, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Because "it is

---

[5] "Block billing is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).

unrealistic to expect a trial judge to evaluate and rule on every entry in an application," courts apply across-the-board percentage cuts. *Carey*, 711 F.2d at 1146.

Courts regularly apply such percentage cuts to fee awards to account for vague time entries. *See, e.g., Local 32B-32J, SEIU v. Port Auth.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing the requested attorney's fees by twenty percent "due to vague descriptions contained in many of the attorney time records."); *Wilder v. Bernstein*, 975 F. Supp. 276, 283-284 (S.D.N.Y. 1997) (reducing the requested fees by ten percent to account for vague time entries); *Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (reducing fee request by fifteen percent to account for certain time entries that were "too vague to adequately assess reasonableness"). Similarly, although "block billing is not prohibited in this Circuit," *Rodriguez*, 84 F. Supp. 2d at 425, because block billing "renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary," courts apply percentage cuts where there is "a substantial amount" of block billing in a fee request. *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing the requested fees by fifteen percent); *see also Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (reducing the requested fees by twelve percent); *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (noting that "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities[.]").

Having carefully reviewed Zausmer and Burton's billing statements, the Court agrees that both include vague time entries. There is, however, a qualitative difference between the two. Although Zausmer's billing statements include some vague

time entries, the number of such entries was not significant, and the Court was, based on its knowledge of the case, able to decipher most of those entries without need for a great deal of speculation; therefore, no reduction is necessitated. This is not, however, the case with Burton's statements, which are rife with vague entries for "conferences," "meetings," and "research," without any further explanation of those services, and which cannot be explained by reference to the context in which they occurred. Accordingly, the Court finds that a fifteen percent reduction of Burton's hours is warranted.

As noted, the Town also contends that the Meyer firm's use of block billing would impede the Court's ability to ascertain the nature of the work performed. The Court agrees. Having reviewed the Meyer firm's billing statements, the Court notes that wherever a time entry contained multiple tasks, such as conducting research, participating in conferences and drafting correspondence, the entry did not break down how much time was spent on each task. Due to ambiguities created by this substantial use of block billing, and the resulting inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable, the Court finds that a ten percent reduction of the hours billed by the members of the Meyer firm is warranted.

**b. Excessive, redundant and unnecessary hours**

The Town argues that certain hours requested are excessive, redundant or otherwise unnecessary. Specifically, it contends that it was unnecessary to have multiple attorneys appear at certain court appearances and that an inordinate number of hours were dedicated to certain services in light of the task at hand. Counsel do not respond to these

contentions. The Court notes that in a complex case such as this, it is common for more than one attorney to attend a court appearance or work on a particular brief. *See Ursa Minor Ltd. v. Aon Fin. Prod., Inc.*, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). In addition, two factors militate against any discount of hours. First, the quality of the work product was first rate; more time is necessarily expended on an excellent legal brief than on a shoddy one of the same length. Second, the results obtained were excellent: Although plaintiffs were not ultimately successful on their CWA and state-law claims, their success on their RCRA claim resulted in a remediation plan that will remove and treat the contaminants in Mott's Creek and Mott's Pond, restore the area to "a pond surrounded by a diverse emergent and forested wetland buffer[,]" and reduce the risk of future contamination from the landfill. *See* Judgment dated December 20, 2004, at 5. Indeed, this victory was achieved in the face of an able and aggressive defense mounted by the Town.

The Town further contends that, due to what it assumes are typographical errors, Scott's billing statement contains duplicate entries for certain services. Counsel do not respond to this contention. The Court, having reviewed Scott's statement, agrees that he inadvertently billed twice for certain services, resulting in over-billing by 8.3 hours; accordingly, the Court reduces Scott's hours by that amount.

### c. Unsuccessful claims

The Town contends that counsel are not entitled to time expended towards prosecution of plaintiffs' unsuccessful state-law claims. In particular, the Town argues that counsel are not entitled to fees for the period from October 5, 2001, when they began briefing those claims, to August 15, 2002, when the Court dismissed those claims. Such

exclusion would result in a reduction of Burton's request by 10.28 hours and Zausmer's request by 58.45 hours.

"When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998); *see also Hensley*, 461 U.S. at 434-35. Where a plaintiff has won substantial relief and all plaintiff's claims for relief involve "'a common core of facts' or were 'based on related legal theories,' so that [m]uch of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," the lodestar should not be adjusted downward to account for the related unsuccessful claims. *LeBlanc-Sternberg*, 143 F.3d at 762 (quoting *Hensley*, 461 U.S. at 434-5). In the present case, however, it is not difficult for the Court to divide the hours expended on a claim-by-claim basis; during the period from October 5, 2001 to August 15, 2002, Burton and Zausmer's efforts were focused solely on the state-law claims. Moreover, they have not shown how those claims were inextricably intertwined with the RCRA claims, on which they had already prevailed by the time they began focusing their efforts on the state-law claims. Accordingly, the Court finds the requested deductions to be appropriate.

With respect to plaintiffs' CWA claim, the Town does not seek a reduction of counsel's requested fees award to account for plaintiffs' lack of success. The Court notes that, unlike their state-law claims, plaintiffs' claims for relief under the CWA and RCRA were based on related legal theories, and it would be difficult to divide the hours expended

on those claims, a fact that the Town appears to acknowledge. *See* Def.'s Mem. Opp'n Pls.'

Counsel's Req. Fees at 18 ("[w]hile the Clean Water Act claim was arguably 'inextricably

intertwined' with the litigation of the RCRA claim, the same cannot be said for the state law

claims."). Accordingly, the lodestar will not be adjusted downward to account for

plaintiffs' lack of success on the CWA claim.

**d. Calculation of reasonable hours**

Based on the foregoing, the Court calculates the reasonable number of hours

for counsel to be as follows:

| | Requested Hours | Deduct. for State-law Claims | Deduct. for Double Billing | Deduct. for Inadequate Records | Adjusted Hours |
|---|---|---|---|---|---|
| Burton | 552.20 | -10.28 | | -15% | 460.63 |
| Scott | 155.32 | | -8.30 | | 147.02 |
| Lindsey | 184.75 | | | | 184.75 |
| Zausmer | 480.95 | -58.45 | | -10% | 380.25 |
| Koppell | 36.60 | | | -10% | 32.94 |
| Ciaffa | 37.50 | | | -10% | 33.75 |
| Turro | 2.25 | | | -10% | 2.03 |
| Paralegal | 4.00 | | | -10% | 3.60 |

**2. *Reasonable Hourly Rates***

With respect to the Meyer firm, counsel request compensation at those

attorneys' current billing rates, namely, for Zausmer, $350 per hour, Koppell, $350 per

hour, Ciaffa, $350 per hour, and Turro, $325 per hour. With respect to the Burton firm,

counsel request compensation at those attorneys' current billing rates, namely, for Burton,

11

$350 per hour, Scott, $350 per hour, and Lindsey, $250 per hour. Counsel also request compensation for the Meyer firm's paralegal at her current rate of $100 per hour. The Town contests these rates as excessive and out of sync with the rates prevailing in the community.

In determining the "reasonable hourly rate," courts ask whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987). The "community" for which the prevailing rate is measured is the geographic area in which "the action was commenced and litigated." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 94 (2d Cir. 2004). Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners, $100 to $150 for junior associates, and $200 to $250 for senior associates. *See King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 169-70 (E.D.N.Y. 2004); *Duke v. County of Nassau*, 2003 WL 23315463 (E.D.N.Y. Apr. 14, 2003); *Hiller v. County of Suffolk*, 199 F.R.D. 101, 109 (E.D.N.Y. 2001); *Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C.*, 2000 WL 130637, at *2 (E.D.N.Y. Feb. 4, 2000); *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp.2d 10, 12-13 (E.D.N.Y. 1999). Thus, counsel's requested rates are in excess of the prevailing rates.

The lodestar may, however, also reflect such factors as time and labor required, novelty and difficulty of issues, skill required, loss of other employment in taking the case, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the amount involved and result obtained, counsel's experience, reputation

12

and ability, the undesirability of the case and the nature and length of the relationship with the client. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986); *Krieger v. Gold Bond Bldg. Products*, 863 F.2d 1091, 1099 (2d Cir. 1988). In many of these respects, this case was an exceptional one.

As counsel correctly point out, the case involved factual and legal issues that were difficult and sharply disputed. For example, having written at length on the issues, the Court can attest that the question of whether the Court had subject matter jurisdiction presented a complex issue of first impression. *See Aiello*, 136 F. Supp. 2d at 106-10 (concluding that the Court had subject matter jurisdiction). Similarly, the discussion of the applicable standard pursuant to which the Town could be held liable under RCRA was far from straightforward. *See id.* at 110-17 (concluding that Town contributed to disposal of solid waste within meaning of 42 U.S.C. § 6972(a)(1)(B) and that aesthetic considerations may trigger liability under that statute). Moreover, the contingent nature of counsel's representation, the riskiness of the case, and the success counsel obtained for their clients, resulting in a remediation plan that will remove the contaminants from Mott's Creek and Mott's Pond and return them to their natural state, all militate in favor of a generous fee award.

Burton and Zausmer's substantial litigation experience also support a generous fee award.[6] *See Luciano*, 109 F.3d at 116 (noting that in addition to the "extent of

---

[6] Zausmer has been a practicing attorney since 1973; he has "handled virtually every type of civil litigation matter[,]" including "several lawsuits involving environmental issues, including this Action," and has "extensive experience in trial, both jury and non-jury, as well as appellate practice." Affirm. of Robert N. Zausmer Supp. Application

success achieved[,]" court may also consider counsel's "experience and expertise in the field of law."). The Town argues that the lodestar should not be adjusted to reflect Burton and Zausmer's many years of experience because their experience with this particular type of litigation was limited. This argument simply misses the point. As the Second Circuit recently noted, because most legal skills are transferrable from one area of practice to another, courts, in establishing the lodestar, look to an attorney's overall experience rather than the attorney's experience in a particular area of practice. *See A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 82 (2d Cir. 2005) ("Even though much of the lawyers' careers was spent practicing in areas other than education law, their overall legal experience merited a higher hourly rate because most important legal skills are transferrable.") (internal quotation marks omitted).

Based on the foregoing factors, and considering that it has now been eleven years since plaintiffs filed their complaint, the Court finds Zausmer and Burton's current billing rates of $350 per hour to be reasonable and appropriate for all their work in this case. *See Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) ("in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).

---

Att'y's Fees and Expenses ¶¶ 23-24. Burton has been a practicing attorney since 1959; he has "handled or worked on thousands of matters[,]" primarily in the area of civil litigation; he has "engaged in all aspects of civil litigation in this action as well as other environmental matters in the New York Supreme Court[,] including pleadings, discovery and trial." Aff. [of Bernard L. Burton] Supp. Mot. Counsel Fees ¶ 5.

As for those other than Burton and Zausmer, however, counsel have failed to provide the Court with any information regarding their levels of skill, experience or reputation. With respect to Koppell, Ciaffa and Turro, the only information counsel offer is that they are or were partners in the Meyer firm. With respect to Scott and Lindsey, the only information counsel offer is that Scott was a partner in the Burton firm and that until October 1996, Lindsey served as independent associate counsel to the firm. With respect to the Meyer firm's paralegal, counsel offer no information. Counsel's submissions are devoid of any explanation of how long each of these individuals has been practicing; nor do counsel make any effort to describe the nature of those individuals' experience. Thus, counsel have failed to meet their burden of establishing the reasonableness of the hourly rates requested for these individuals. *See Blum,* 465 U.S. at 896 n. 11 ("the burden is on the fee applicant to produce satisfactory evidence. . . that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of *reasonably comparable skill, experience, and reputation."*) (emphasis added). Accordingly, the Court finds it appropriate to reduce these requested rates. *See General Electric Co. v. Compagnie Euralair, S.A.,* 1997 WL 397627, at *5 (S.D.N.Y. Jul. 3, 1997) (holding that where plaintiff's counsel did not provide court with adequate information as to counsel's experience level or why billing rate was reasonable, court would reduce fee request); *see also Marisol A. v. Giuliani* , 111 F. Supp. 2d 381, 388 n. 5 (S.D.N.Y. 2000) (holding that where fee applicant failed to provide resumes for a number of paralegals and it was unclear how much experience they had, court would calculate such paralegals' fees at $75, the lowest rate available).

Based on their failure to provide any information regarding their skill,

experience or reputation, the Court would be inclined to afford these individuals only the lowest available prevailing rates, namely $200 for partners, $100 for associates, and $75 for paralegals. In light of the complexity of the case, its inherent risks, and the exceptional results achieved, however, the Court finds that an hourly rate of $250 is appropriate for Koppell, Ciaffa, Turro, and Scott; an hourly rate of $150 is appropriate for Lindsey; and an hourly rate of $100 is appropriate for the Meyer firm's paralegal.

### 3. Enhancement

With respect to counsel's request for an across-the-board twenty-five percent fees enhancement due to the inherent risks, it is well-settled in this Circuit that risk enhancements are not permissible under fee-shifting statutes such as RCRA. *See Dague*, 505 U.S. at 565 ("no contingency enhancement whatever is compatible with the fee-shifting statutes at issue[,]" namely, 42 U.S.C. § 6972(e) of RCRA and 33 U.S.C. § 1365(d) of the CWA); *Loper v. New York City Police Dep't*, 853 F. Supp. 716, 721 (S.D.N.Y. 1994) (stating that in light of *Dague*, "fee enhancements under fee shifting cases are no longer permissible in this Circuit."). Moreover, the risks have been subsumed in the Court's calculation of the reasonable hourly rates. *See Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 306 (S.D.N.Y. 1998) ("It is the practice of courts in awarding attorneys' fees to subsume all factors into the lodestar calculation."). Accordingly, the Court denies counsel's request for a twenty-five percent fee enhancement.

### 4. Calculation of the Lodestar Amount

With the appropriate adjustments in hours billed and hourly rates, the lodestar calculation is as follows:

### The Burton Firm

|  | Hours | Hourly Rate | Total |
|---|---|---|---|
| Burton | 460.63 | $350 | $161,220.50 |
| Scott | 147.02 | $250 | $36,755.00 |
| Lindsey | 184.75 | $150 | $27,712.50 |
|  |  | Total: | $225,688.00 |

### The Meyer Firm

|  | Hours | Hourly Rate | Total |
|---|---|---|---|
| Zausmer | 380.25 | $350 | $133,087.50 |
| Koppell | 32.94 | $250 | $8,235.00 |
| Ciaffa | 33.75 | $250 | $8,437.50 |
| Turro | 2.03 | $250 | $507.50 |
| Paralegal | 3.60 | $100 | $360.00 |
|  |  | Total: | $150,627.50 |

## C. Costs

As noted, in addition to attorneys' fees, counsel also seek costs in the amount of $30,845.15. The Second Circuit has held that reasonable, identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See United States Football League*, 887 F.2d 408, 416 (2d Cir. 1989); *see also Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including photocopying, travel and telephone costs). Payment is not permitted, however, for items which constitute routine office overhead. *See LeBlanc-Sternberg*, 143 F.3d at 763.

The Town contends that certain of counsel's costs, namely business meals and secretarial overtime, are non-recoverable overhead. Counsel concede that such expenses, totaling $496.93, are not recoverable as costs. *See* Pls.' Reply Mem. at 8. Accordingly, such costs are disallowed.

The Town next contends that counsel's Westlaw service charges, totaling $7,463.66, are non-recoverable. Because "the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, . . . in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award." *Arbor Hill*, 369 F.3d at 96. Nor does the Court have any reason to doubt the veracity of counsel's Westlaw service charges. Accordingly, that cost is allowed.

Finally, the Town contends that the bulk of counsel's request of $21,096.37 for "miscellaneous expenses" lacks sufficient specificity to constitute a reasonable, identifiable cost. Counsel respond that, had the Town more closely reviewed Zausmer's affirmation and the Meyer firm's billing statements, it would have realized that the miscellaneous expenses consist of $1,508.75 in payments to court reporting firms for transcripts, $415.68 for color enlargements, and $19,172.94 in payments to Lindsey for work as a consultant.

Court reporter services are reimbursible costs. *See New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 311 (E.D.N.Y. 1998). The Court has no reason to doubt the veracity of the Meyer firm's billing statements reflecting $1,508.75 for court reporter services. Accordingly, that cost is allowed.

Enlargements are reimbursable costs, but only for "exhibits [that] were

necessary to the understanding of an issue and a material aid to the jury." *See Robinson v. Burlington Northern R.R. Co.*, 963 F. Supp. 691, 694 (N.D. Ill. 1997). Because counsel provide no information about the nature of the enlargements for which they seek reimbursement, it is not apparent that the enlargements were of necessary exhibits; therefore, that cost is disallowed.

With respect to Lindsey, as noted, she served as associate counsel to the Burton firm until October 1996; her work on behalf of that firm is reflected in the Court's attorneys' fees award. From February 1997 to December 1999, she performed a range of legal services for the Meyer firm as a consultant, for which she submitted regular invoices and was paid at a rate of $75 per hour. Although that work should more appropriately have been included in counsel's request for attorneys' fees rather than their request for costs, the Court will not penalize counsel for that error in categorization. The Court, having carefully reviewed Lindsey's bills to the Meyer firm, finds the number of hours requested (approximately 255 hours) to be reasonable for the work performed. With respect to the rate requested, given that the Court found $150 per hour to be a reasonable rate for Lindsey's work on behalf of the Burton firm, the Meyer firm's request to be compensated for her work at the discounted rate of $75 hour is abundantly reasonable. Thus, although this "cost" should have been included in the request for attorneys' fees, it is nonetheless allowed.

Based on the foregoing, the Court reduces counsel's request by $912.61 and awards them costs in the amount of $29,932.54.

## D. Interest on Attorneys' Fees Award

Although the parties do not raise the issue, the Court will address the question of interest on its award in order to circumvent future collateral litigation. "[I]t is an open question in the Second Circuit whether interest runs from the date of the judgment establishing the right to the award of attorneys fees or from the date of the judgment establishing its quantum." *Albahary v. City & Town of Bristol,* 96 F. Supp. 2d 121, 122 (D. Conn. 2000). Since *Albahary* was decided, the Second Circuit Court of Appeals has still not taken up this issue. The majority rule, followed in the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits, is that interest accrues "from the date the party becomes entitled to the award even if that award is not quantified until a later point." *Id.* at 123 (collecting cases). The majority position is based on the realization that, "[w]hile the fee-paying party is under no legal compulsion to satisfy its obligation before quantification, it also 'suffers no prejudice from any delay in quantifying the award because it has use of the money in the interim and because the statutory interest rate is tied to the U.S. Treasury Bill rate.'" *Albahary,* 96 F. Supp. 2d at 123 (quoting *Jenkins v. Missouri,* 931 F.2d 1273, 1277 (8th Cir. 1991)). The minority rule, followed in the Third, Seventh and Tenth Circuits, states that interest accrues from the date it is quantified. *See id.*

The Court follows the *Albahary* court in aligning itself with the majority rule; therefore, it awards counsel post-judgment interest on the award of attorneys' fees and costs at the U.S. Treasury Bill rate, *see* 28 U.S.C. § 1961(a), from the date they became entitled to receive attorneys' fees and costs. *See King,* 325 F. Supp. 2d at 175 (following *Albahary* and awarding "post-judgment interest on the award of attorneys' fees and costs

at the U.S. Treasury Bill rate" from the date of judgment). That date is determined to be December 20, 2004, the date the Court entered judgment.

## CONCLUSION

Based on the foregoing, counsel's application for attorneys' fees and costs is granted, as modified by the Court. Counsel are awarded attorneys' fees in the amount of $376,315.50 and costs in the amount of $29,932.54. The total award is subject to interest, accrued in accordance with 28 U.S.C. § 1961, from December 20, 2004, until the award is paid.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
June 13, 2005